IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NAMON CURLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-06-0698 |
| GLOBE GROUND NORTH AMERICA, | § | |
| LLC d/b/a SERVISAIR/GLOBE | § | |
| GROUND, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant's Motion for Summary Judgment on Claims Brought by Plaintiff Namon Curley (Docket Entry No. 16). For the reasons stated below, the motion will be granted.

### I. Background

Defendant, Globe Ground North America, LLC, provides fueling services at Hobby Airport in Houston, Texas, under contracts with various airlines.[1] Defendant's predecessor hired plaintiff, Namon Curley, in 1990 as Operations Manager of fueling operations. In 2001 plaintiff was promoted to the position of General Manager and became responsible for overseeing the fueling operations for all of defendant's contracts.[2] At the time, defendant had fueling

---

[1]Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 4.

[2]Id.

contracts with American Airlines, American Eagle, and AirTran. Fueling operations for these airlines were referred to as the "Division 600."[3] In June of 2002 defendant acquired the assets of its competitor, Choctaw, which included a contract to provide fueling services to Southwest Airlines. Defendant retained the Choctaw General Manager, Mark Farrow, but demoted him to Operations Manager. Fueling operations for Southwest Airlines became known as the "Division 601."[4] The Southwest Airlines contract greatly increased defendant's fueling responsibilities, thereby increasing plaintiff's responsibilities as the General Manager.[5] Consistent with the historical division of responsibilities, plaintiff continued to focus his efforts on overseeing the Division 600 operations while Farrow remained focused on the Division 601 operations, even though the job descriptions did not divide the duties in this manner.[6]

In June of 2003 defendant received a critical audit from Southwest Airlines. Defendant asserts that, based on this audit, it determined that plaintiff was not successfully handling his job as General Manager of the extended operations. Defendant demoted plaintiff to Manager of Maintenance and Facilities but left his

---

[3]Id.

[4]Id.

[5]Id.; id. at Exhibit E, Deposition of Namon Curley, pp. 61-62.

[6]Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 5.

salary unchanged.  In his new position plaintiff continued to focus on the Division 600 operations.  Farrow remained responsible for the Division 601 operations and maintained the training records and environmental reports for both the 600 and 601 Divisions.[7]

On June 8, 2005, an auditor from AirTran, a Division 600 airline, conducted an audit of the fueling equipment and operations.  The AirTran auditor noticed several deficiencies, including two airport fuel trucks that were leaking fuel.  Later that day plaintiff and Farrow signed off on a list of the deficiencies found by the auditor.  Plaintiff asserts that he called a fueler at home and instructed that the leaking trucks were not to be used until they were fixed.[8]  Plaintiff admits that he did not remove the keys from the truck or otherwise follow lock-out tag procedures, but testified that he was instructed only to have the vehicles repaired, not to take them out of service and that, in his opinion, the leaks were too small to create any substantial risk if used in that condition.[9]

The next afternoon the auditor told Farrow and Richard Johnson, the new General Manager, that she was furious because she had seen one of the leaking fuel trucks being used to fuel an AirTran flight and because plaintiff had refused to meet with her

---

[7]Id.

[8]Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Exhibit 1, Affidavit of Namon Curley, p. 3.

[9]Defendant's Motion for Summary Judgment, Docket Entry No. 16, Exhibit E, Deposition of Namon Curley, pp. 137-39.

to discuss it.  The auditor threatened to notify the Federal Aviation Administration and Airport Operations, and to seek sanctions against Globe Ground.[10]  After assuring the auditor that her concerns would be addressed, defendant conducted an investigation of the situation.  Based on other employees' statements, defendant concluded that plaintiff had allowed one of the leaking fuel trucks to be used and had told the auditor that he would meet with her to discuss it but never returned to the office, leaving her to wait.[11]  Defendant also found that other employees had informed plaintiff that the auditor was waiting for him, entreating him to meet with her, but that plaintiff refused and told them he was going home.[12]  Following the investigation, plaintiff was fired.[13]

---

[10]Defendant's Motion for Summary Judgment, Docket Entry No. 16, Exhibit A, Affidavit of Richard Johnson at ¶ 12.

[11]Id. at ¶ 13.  Plaintiff denies that he avoided the auditor, testifying that after speaking to the auditor on the ramp he called Farrow and asked him to meet with the auditor because plaintiff had to go inspect another truck.  Id. at Exhibit E, Deposition of Namon Curley, pp. 148-50.  In a later affidavit plaintiff states that when he saw the auditor on the ramp he informed her that he could not meet right then, and she agreed to meet with Farrow instead.  Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Exhibit 1, Affidavit of Namon Curley, p. 4.

[12]Defendant's Motion for Summary Judgment, Docket Entry No. 16, pp. 8-9.  Plaintiff states that he told the other employees that Farrow would meet with the auditor.  Id. at Exhibit E, Deposition of Namon Curley, p. 150; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Exhibit 1, Affidavit of Namon Curley, p. 4.

[13]Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 11.

Plaintiff filed suit in state court, alleging that he was a victim of age and race discrimination under § 21.051 of the Texas Commission on Human Rights Act (TCHRA). Defendant removed the case to this court based on diversity jurisdiction.[14]

## II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to a judgment. Fed. R. Civ. P. 56(c). A "material fact" is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u> at 2511. If the movant meets this burden, the nonmovant must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material facts that must be resolved at trial. <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods.</u>, 120 S. Ct. 2097, 2110 (2000). Factual

---

[14] Notice of Removal, Docket Entry No. 1.

controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The plaintiff must reveal a conflict in substantial evidence on the ultimate issue of discrimination in order to withstand a motion for summary judgment. Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998) (citing Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)). Evidence is substantial if it is of such a quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Id. Consequently, a mere scintilla of evidence is insufficient to present a question for the jury. Rhodes, 75 F.3d at 993.

### III. Applicable Law

Under § 21.051 of the TCHRA an "employer commits an unlawful employment practice if because of race, . . . or age the employer . . . discharges an individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE § 21.051(a)(1) (Vernon 2006). An "unlawful employment practice is established when the complainant demonstrates that race, . . . [or] age . . . was a motivating factor for the employment practice, even if other factors also motivated the practice." TEX. LAB. CODE § 21.125(a) (Vernon 2006). The Texas legislature modeled

-6-

Chapter 21 of the Texas Labor Code after federal employment discrimination law.  Consequently, when reviewing a TCHRA case courts may also look to cases interpreting the analogous federal provisions for guidance.  Pineda v. United Parcel Service, Inc., 360 F.3d 483, 487 (5th Cir. 2004); Quantum Chemical Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).

In discrimination cases brought under the TCHRA, the plaintiff has the initial burden to come forward with prima facie cases of age and race discrimination.[15]  Machinchick v. PB Power, Inc., 398 F.3d 345, 356 (5th Cir. 2005).  Establishing a prima facie case shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for its action.  Id.  If the employer comes forward with such a reason, the plaintiff is required to show that either (1) the reasons were not true but, rather, were a pretext for discrimination, or (2) even if the reasons were true, another motivating factor was age and/or race.  Id.; Kokes v. Angelina College, 148 S.W.3d 384, 393 (Tex. App. -- Beaumont 2004, no pet.).  Under either alternative the plaintiff need only show that discrimination was a motivating factor, not that it was the sole reason for the employment decision.  Quantum, 47 S.W.3d at

---

[15]A prima facie case of age and race discrimination is made by showing that plaintiff (1) is a member of a protected class, (2) was discharged, (3) was qualified for the position from which he was discharged, and (4) that similarly situated unprotected class members were not treated similarly.  See Machinchick v. PB Power, Inc., 398 F.3d 345, 356 (5th Cir. 2005) (age discrimination); Herbert v. City of Forest Hill, 189 S.W.3d 369, 375 (Tex. App. -- Fort Worth 2006, no pet.) (race discrimination).

479-80; Pineda, 360 F.3d at 488, n.4. Although the intermediate evidentiary burdens shift back and forth, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. Reeves, 120 S. Ct. at 2097.

## IV. Analysis

The Fifth Circuit has held that in order to "establish a prima facie case, a plaintiff need only make a very minimal showing." See Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) (quoting Thornbrough v. Columbus and Greenville R. Co., 760 F.2d 633, 639 (5th Cir. 1985)). Defendant does not argue that plaintiff has failed to establish prima facie cases of discrimination.[16]

The burden thus shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate plaintiff. Defendant meets this burden by showing that plaintiff was terminated because it was determined, after an investigation, that plaintiff allowed a leaking fuel truck to be used to refuel an aircraft and was disrespectful to the AirTran auditor.[17] See, e.g.,

---

[16] Defendant's Motion for Summary Judgment, Docket Entry No. 16, pp. 3, 15.

[17] Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 16. Defendant states, and plaintiff acknowledges, that defend-ant's business depends on respectful treatment of airline auditors in order to retain fueling contracts. Id. at 7; id. at Exhibit E, Deposition of Namon Curley, p. 116.

Perez v. Region 20 Educ. Serv. Center, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge.").

To survive defendant's summary judgment motion plaintiff must produce sufficient evidence to show the existence of a material fact on the issue of whether (1) defendant's reasons are not true but, rather, are a pretext for discrimination or, (2) even if the reasons are true, another motivating factor was age and/or race. See Machinchick, 398 F.3d at 356; Kokes, 148 S.W.3d at 393. "A plaintiff in a discrimination case may proceed 'either by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Kokes, 148 S.W.3d at 393 (quoting Tex. Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1095 (1981)). To show pretext, "it is not sufficient merely to show that the employer's reasons are false or not credible; the plaintiff must prove that the employer discriminated intentionally." Little v. Tex. Dep't of Crim. Justice, 177 S.W.3d 624, 632 (Tex. App. -- Houston [1st Dist.] 2005, no pet.) (citing Reeves, 120 S. Ct. at 2108). While a plaintiff's prima facie case, along with sufficient evidence to find that the employer's asserted justification is false, may be sufficient to infer unlawful discrimination, "instances exist where, although the plaintiff has established a prima facie case and set forth sufficient evidence to

reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. . . . [For example] [a]n employer would be entitled to summary judgment . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  Id. (internal citations omitted).

Plaintiff first argues that Farrow, a younger, white employee, was treated more favorably than plaintiff.[18]  Plaintiff argues that the Southwest Airlines audit illustrates this disparate treatment by pointing out that, on a daily basis, Farrow was in charge of the Southwest Airlines flights but that Farrow was not punished for the Southwest Airlines audit.  Plaintiff also notes that Farrow was not punished after the AirTran audit, although Farrow also signed off on the list of deficiencies after the AirTran audit.[19]  To support a claim of employment discrimination based on disparate treatment an employee must show he was similarly situated to the unpunished employees.  An employee is "similarly situated" to the plaintiff if their circumstances

> are comparable in all material respects, including similar standards, supervisors, and conduct. . . . Although precise equivalence in culpability between employees is not the ultimate question, the Fifth

---

[18]Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, pp. 8-10.

[19]Id.

> Circuit has held that to prove discrimination based on disparate discipline, the plaintiff must usually show that the misconduct for which he was discharged was nearly identical to that engaged in by [the other] employee whom [the employer] retained.

<u>Ysleta Indep. Sch. Dist. v. Monarrez, et al.</u>, 177 S.W.3d 915, 917-18 (Tex. 2005) (internal quotations omitted).

Plaintiff has not shown that he and Farrow were similarly situated with regard to either audit. Plaintiff acknowledges that, as General Manager, his responsibilities included the fueling operations for all flights, including Southwest Airlines, despite the fact that they divided the work between the 600 and 601 Divisions on a daily basis.[20] Plaintiff also acknowledges that, at the time, he and Farrow had different supervisors, as plaintiff was Farrow's boss.[21] Due to plaintiff's increased responsibilities as General Manager, Farrow cannot be considered "similarly situated" to plaintiff; and it is, therefore, not probative that Farrow was not punished for the Southwest Airlines audit. Furthermore,

---

[20] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Exhibit E, Deposition of Namon Curley, pp. 61-62.

[21] <u>Id.</u> Plaintiff also notes that after his demotion from General Manager, plaintiff was denied the use of an office while Farrow continued to use an office. Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, p. 5. However, plaintiff continued to have use of a company truck, unlike Farrow, and Farrow's duties included maintaining environmental and training records for both the 600 and 601 Divisions, as well as overseeing the 601 Division fueling operations. Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 6. Thus, plaintiff and Farrow were not similarly situated in this regard.

plaintiff misstates defendant's proffered reasons for termination. Defendant does not allege that plaintiff was fired because of the AirTran audit itself, but because of plaintiff's actions in allowing the leaking fuel truck to be used and plaintiff's disrespectful attitude toward the AirTran auditor.[22] The fact that Farrow was not punished for the AirTran audit does not, therefore, tend to prove that defendant had a discriminatory motive.

Plaintiff also disputes defendant's findings in its investigation. He argues that, in his opinion, using the leaky fuel truck did not create a dangerous situation and that he was not disrespectful to the AirTran auditor because he believed Farrow was meeting with her and that this was satisfactory.[23] However, "[a]n at-will employer does not incur liability for carelessly forming its reasons for termination." Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 (Tex. 2003). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason for adverse employment action." Herbert v. City of Forest Hill, 189 S.W.3d 369, 376 (Tex. App. --

---

[22]Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 16.

[23]See supra notes 9 & 11 and surrounding text. Defendant states that plaintiff was notified as to the reason for his suspension and failed to offer any explanation at the time as to why his actions were acceptable. Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 3.

Fort Worth 2006, no pet.). Defendant was not obligated to conduct an investigation, and plaintiff cannot raise a genuine issue of material fact by contending that the investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion. See Wal-Mart Stores, Inc., 121 S.W.3d at 740.

Plaintiff states that it is his belief that his race and age motivated defendant's decision,[24] and points out that his replacement is Caucasian and younger than plaintiff,[25] and that plaintiff was the oldest and only black manager.[26] The court concludes that plaintiff's circumstantial evidence is insufficient to create a genuine issue of fact for trial.

## V. Conclusion and Order

For the reasons stated above, the court concludes that summary judgment is warranted because plaintiff has not shown the existence of a disputed material fact regarding whether defendant's proffered

---

[24] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Exhibit E, Deposition of Namon Curley, pp. 168-69. Plaintiff's "own self-serving generalized testimony stating [his] subjective belief that discrimination occurred" does not by itself create a genuine issue of material fact. Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994).

[25] Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, p. 7.

[26] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Exhibit E, Deposition of Namon Curley, pp. 167-69. Plaintiff also testified that he believes his high salary might have been another motivating factor for his termination. Id.

reasons for terminating him were a pretext for discrimination, or that illegal discrimination was a motivating factor for plaintiff's termination.  Defendant's Motion for Summary Judgment (Docket Entry No. 16) is therefore **GRANTED**.

    **SIGNED** at Houston, Texas, on this 3rd day of January, 2007.

                                                 SIM LAKE
                                  UNITED STATES DISTRICT JUDGE